FRUGÉ, Judge
(dissenting).
It is my belief that the majority of this court has fallen into error in reaching their decision, and for this reason I strongly dissent.
The note is not simply a note payable on demand, but is apparently a note form normally utilized as a hand note in accordance with a collateral mortgage. The note’s terms entail the following: the note was executed at New Iberia, Louisiana, on February 2, 1964, for the sum of $29,400.00. It further states that “On Demand months after date we in solido promise to pay to the order of the People’s National Bank of New Iberia, Louisiana, Twenty-nine Thousand Four Hundred and No/100 ($29,400.-00) Dollars.” The note in its original form also provided that this sum was payable at “its banking room in New Iberia, Louisiana, for value received, with interest at the rate of 8% per annum from maturity date until paid, and 10% additional on amount of principal and interest if placed in the hands of an attorney for collection.” (The remainder of the body of the note is not relevant to the issues involved on this appeal.) The note was initially altered at the time of its execution to provide that the aforestated interest rate of 8% per an-num would actually be 6% per annum from maturity date. A provision was also supplied in the lower left-hand corner of the note, as follows: “Send notice monthly for installments of $200.00.”
At the time that the suit was initially filed, a photostatic copy of the original note was annexed thereto. However, at the trial of this matter the original note was introduced and contained a cancellation of the word “maturity” from the sentence previously set out in the foregoing, and such alteration was noted by the trial court. Also significant is the fact that numerous payments were made over a period *567 of 28 months and were credited on the reverse side of this note, exclusively to principal. At no stage of these payments is there any indication that an allowance was made for the payment of interest.
I find manifest error in the majority’s opinion as well as in the lower court’s determination that the note at issue constituted a simple demand note. From a review of the record, the instrument at issue was considered between the parties to be, at most, a non-negotiable installment note. Even without the benefit of the record and the background precedent to the issuance of this note, an examination of the eight corners of the note reveals that it is neither a negotiable demand note nor a negotiable installment note. As stated in SFC Acceptance Corporation v. Spain, 251 La. 902, 207 So.2d 364, 367 (1968):
“. . . .it cannot be ascertained from its eight corners that it is payable ‘at a fixed or determinable future time’, as it should be to make it regular in accordance with the requirements of La.R.S. 7:1.”
This note is not a “demand” note in the negotiable instruments law sense, because in reading all terms of the note, as well as marginal memoranda, it cannot be safely assumed that the due date of the note is certain from its face. It is likewise apparent that the note cannot be considered a negotiable installment note, for the due date of the installments cannot be ascertained with certainty from the face of the note nor from its reverse side and the payment dates included thereon. This note being of a non-negotiable character, the rules of the negotiable instruments’ law are inapplicable.
The majority has stated that:
“The notation in the left lower corner is more indicative of a collateral agreement or understanding substantially to the effect that monthly installments would be satisfactory until further arrangements were made rather than an amendment of a demand note into an installment one. The fact that the payments made were credited to the principal without any deduction for interest is indicative, too, of an agreement to the effect that interest would not be required at least for the time being.”
I do not find support for such an interpretation to exist within the record subject to review. It is apparent from the record that the note in question was given in renewal of a prior indebtedness. Defendant testified that the note was discounted, and as such, it would have contained the interest payable within its face amount. Any other interest thereon would result only from default and a demand by the plaintiff bank. There is no evidence in the record from which it can be deduced that the note was subject to a “collateral agreement” which contemplated “further arrangments” either in regard to the method of payment or in regard to the issue of interest.
With the foregoing in mind, and in the interest of doing justice, reliance should have been placed upon the applicable authority provided by the Louisiana Civil Code. I feel that a just result could have been most readily achieved through an application of the Civil Code authorities to the factual circumstances which precipitated the execution of this note.
A narrative history of incidents prior to the execution of this note was provided the lower court by defendant’s narration of plaintiff bank’s dealings with the defendant and defendant’s client, the Pineville Canning Company of St. Martinville, Louisiana. Defendant’s narration was far encompassing in scope and was originally permitted subject to a general objection made by plaintiff’s counsel. Defendant’s testimony revealed that, during its existence, the Pineville Canning Company had been involved in multiple financial involvements and business transactions.
It is sufficient to say that the company got in “over its head” and resort was had to an attempted reorganization. The at *568 tempted reorganization was unsuccessful and as a result the company failed. Although the record is not very clear, to the best of may understanding, it was during this latter period that the defendant, having previously indebted himself for the benefit of the Pineville Canning Company and in favor of the plaintiff bank, once again executed a note, it being the one at issue in the instant case.
All of the business transactions and interactions between the plaintiff bank and the Pineville Canning Company were not clearly brought to light by the defendant’s testimony. However, it is evident that the' defendant did execute the note in question in order to pay insurance premiums to insure goods which served as security for the bank’s prior loans to the Pineville Canning Company. While defendant does not deny the execution of the note, he testified that the note itself was a discounted note and was understood between the parties to be payable in monthly installments of $200.00 to be made in accordance with his financial ability to pay. La.Civ.Code art. 1950. It is pointed out as noteworthy that, while the plaintiff’s counsel had objected initially to the historical narrative given by the defendant, he subsequently stipulated that everything the defendant testified to was true and correct but that this testimony was completely immaterial and irrelevant.
In interpreting the legal effect of this note, it is strongly felt that the factual circumstances apparent from the record require that due weight be given to the extraneous evidence supplied by defendant. I am of the opinion that each and every part of this note should be afforded a significant role in its interpretation, especially in light of what is deemed to have been in the contemplation of these parties.
Had the note truly been a demand note made payable in monthly installments through the bank’s accommodation, it would not have been necessary to place the notice provision on the face of the note; a simple bookkeeping notation would have been sufficient. It is also apparent that the note was not treated as an ordinary demand note from an examination of the manner of recordation of payments made. Defendant has strenuously argued that the note was an installment or time note; however, I do not find its terms were intended to provide the sound basis upon which a negotiable installment note should be predicated. La.Civ.Code arts. 1955, 1956. From the note as shown by the included facsimile, and the uncontradicted evidence as testified to by defendant, I feel the result I have reached is required in order to do justice to the true intention of the parties. La.Civ.Code art. 1945.
Noteworthy considerations in an evaluation of the. record are as follows. First, it is evident that the plaintiff bank put on no meaningful testimony in regard to the circumstances surrounding the creation of the obligation evidenced by this note. No explanation was offered as to why all payments made, from the note’s inception until default, were credited consistently to principal and never to interest. Also, no evidence was ever offered or forthcoming as to the occurrence of the interlineation or alteration of the note subsequent to the filing of the plaintiff’s petition.
In spite of the magnitude of the plaintiff’s claim on the note, plaintiff produced no officials of the bank who could provide insight into the bank’s personal dealings with the defendant in relation to the note at issue. It is evident that the plaintiff was either unable or unwilling to delve into the facts and circumstances which surrounded this note. As to the bank’s motivation or lack of motivation, we offer no comment except to say that the bank’s evidence is most deficient in these areas. Defendant’s testimony, the initial objections thereto being subsequently overridden by a stipulation as to the authenticity thereof, must be given due weight in our determination of the actual intent of the parties. The defendant sought to benefit plaintiff bank by incurring further indebtedness on *569 his own part in order to purchase insurance premiums to preserve the security of the bank. It is clear that the defendant considered personal bankruptcy as a means by which his indebtedness could be alleviated. Significantly, however, defendant opted not to take this course of action and sought to work things out with the bank for their mutual benefit.
At the time of this instrument’s issuance, it was given as a renewal of a prior $30,000.00 indebtedness. The defendant at this time was in a dire financial strait, and it is evident from the record that the plaintiff bank chose to recover some of their outlay rather than lose it all by requiring that defendant execute a strict demand note, with interest accruing from the date of its issuance, which he would be unwilling to undertake. It was in the interest of both parties to give a long-range effect to the obligation evidenced by the note, in order that both would profit. This particular note was not associated with any collateral and, that reason among others, leads me to the assumption that it was never meant to constitute a negotiable instrument. It would have never been acceptable by investment houses in the financial stream because of its absolute lack of collateral, besides the apparent indefiniteness as to its time of payment.
I am firmly of the opinion that this note was made in response to the needs of both parties thereto and, for that reason, it was never intended to comply with the requirements of a negotiable promissory note. LSA-R.S. 7:1, 184. It was meant to represent a standing obligation, the satisfaction of which would come with the passage of numerous months. The 6% rate of interest was to become due and owing only upon default in payment of a monthly installment and a subsequent demand by plaintiff. As further evidence of this agreement, the payments credited to principal, although being made quite systematically for the first few months, were anything but regular thereafter. No monthly demands were made after defendant’s default in payment and, therefore, no interest was ever charged during this period.
It is clear from the record that no notices for payments of monthly installments were ever sent, thus the 6%'per annum interest did not commence to run until the filing of this action. This rate of interest, therefore, should run only from the date of judicial demand in regard to the matured and unpaid installment amounts outstanding at the time of the institution of this suit. Said percentage rate should apply to unmatured installments only from their respective maturity dates, and after demand has been made thereon. Attorney’s fees should be permitted in accordance with the contractual provisions of the note, and plaintiff-appellee should pay all costs of this appeal.
I respectfully dissent.